# Amanda Martin's Appeal.

1. Where several pieces of real estate are subject to a common encumbrance, and are aliened successively, the properties so disposed of are liable for the amount of the encumbrance in the inverse order of alienation. Hence if the encumbrancer release from the lien of the encumbrance those subsequently aliened, such released premises being sufficient in value to discharge the debt, those previously aliened are discharged from the lien of the encumbrance.

2. A. being seised of lots 1, 2 and 3, executed to B. a mortgage covering them all. A. subsequently successively conveyed the lots as follows: No. 1 to C, No. 2 to D, No. 3 to E. Afterwards B. released to C. and E, the lien of his mortgage upon lots Nos. 1 and 3. It appeared that lot No. 3 was of value sufficient to pay the mortgage in full. *Held* (upon distribution of the proceeds of a sheriff's sale of lot No. 2 under a prior ground-rent), that by the execution of this release lot No. 2 was discharged from the lien of the mortgage.

3. An application for an issue of fact is properly refused where the applicant could not exhibit a condition of affairs under which he could recover even if all the facts alleged by him to be true were found in his favor.

January 13th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

Appeal of Amanda Martin, executrix and legatee of the estate of Edward D. Martin, deceased, and claimant as mortgage liencreditor, from the decree of the Court of Common Pleas, No. 2, of Philadelphia county, confirming the report of an auditor appointed to distribute the proceeds of a sheriff's sale of a house and lot of ground No. 839 North Broad street. Of January Term 1879, No. 179.

The said premises were sold under an execution upon a judgment obtained in an action of covenant sur ground-rent deed, dated

[*Martin's Appeal.*]

May 2d 1849. Before the auditor appointed to distribute the fund, Amanda Martin, the appellant, claimed payment of the amount of a mortgage for $2000, dated May 25th 1849. This claim was contested by Ferdinand Sarmiento, who claimed the balance of the fund as terre-tenant and owner, and by Mrs. Susan L. Morris, who claimed under a mortgage executed by Sarmiento to her on said premises, dated April 4th 1868, for $1666.67. The principal question was, whether the premises in question had been released by operation of law from the lien of the $2000 mortgage, under which Amanda Martin claimed.

The material facts of the case, as found by the auditor, were as follows:

On May 2d 1849, John McClosky by three indentures conveyed to John Grimstone in fee-simple, three lots of ground now known as Nos. 837, 839 and 841 North Broad street, in the city of Philadelphia, each lot subject to a ground-rent. These deeds were recorded June 9th 1849. A house was subsequently erected on each lot.

On May 25th 1849, John Grimstone executed to Alonzo Farrington a mortgage for $2000, on the said lots, Nos. 837, 839 and 841, which mortgage was recorded May 26th 1849.

On the same day Grimstone granted and conveyed the said three lots, Nos. 837, 839 and 841 to Robert M. Fitch in fee-simple; deed recorded May 9th 1850.

On June 12th 1850, Fitch granted and conveyed house and lot No. 841 to Robert M. Foust in fee-simple; deed recorded March 24th 1853.

On August 21st 1850, Fitch granted and conveyed house and lot No. 839 to Henry A. Charter in fee-simple; deed recorded October 28th 1850. Ferdinand Sarmiento, appellee, claims under this deed through Charter.

On November 7th 1851, Fitch granted and conveyed house and lot No. 837 to Peter Bitmeyer in fee-simple; deed recorded November 19th 1851.

On December 7th 1850, Alonzo Farrington, the mortgagee of the $2000 mortgage, died, and Mary Farrington, his wife, took out letters of administration on his estate.

On November 10th 1851, Mary Farrington, administratrix, executed to Robert M. Fitch, owner of No. 837, and to Robert M. Foust, owner of No. 841, a release of those lots from the lien of the said $2000 mortgage; which release contained the following proviso, "provided always, nevertheless, that nothing herein contained shall be deemed or construed to release or discharge the remainder of the grounds and premises in the said indenture of mortgage described from the lien and operation of the said mortgage, or from the payment of the said principal debt and interest thereby secured." This release was recorded November 19th 1851.

On November 17th 1851, Mary Farrington, administratrix, assigned to William Spink the said $2000 mortgage, and Spink, on December 12th 1851, assigned the same to Edward D. Martin, the appellant's testator.

On September 6th 1876, Edward D. Martin issued a scire facias on the said $2000 mortgage against John Grimstone, mortgagor, in which Ferdinand Sarmiento, owner of house and lot No. 839, was made party defendant as terre-tenant. Sarmiento filed an affidavit of defence, and the cause was put to issue, but before trial, Edward D. Martin, the plaintiff, died, and no further proceedings were had. Edward D. Martin, by his will dated July 3d 1877, bequeathed the said mortgage to Amanda Martin, and constituted her the executrix of his will.

On April 4th 1868, Ferdinand Sarmiento executed a mortgage on No. 839 to Susan L. Patrick, now Susan L. Morris, for $1666.67.

On June 21st 1877, a summons covenant sur ground-rent deed was issued by T. B. Dixey, executor and trustee of John Dixey, deceased, who was assignee of John McCloskey, against John Grimstone, covenantor, and Ferdinand Sarmiento, terre-tenant, on which judgment was obtained and the premises sold at sheriff's sale, as aforesaid, for $3600.

The auditor reported, inter alia, as follows : That the sale discharged all the liens upon the land, and turned them over on the fund for satisfaction. That no valid assignment of the $2000 mortgage was ever made to Edward D. Martin, and that no interest had ever been paid thereon since its execution, and that Spink was the equitable owner both of the houses and of the $2000 mortgage. The auditor further reported as follows :

" The purchasers of these several lots of ground subject to this general mortgage were in equity to be charged in the inverse order of their alienation, in accordance with the doctrine laid down by the Supreme Court of Pennsylvania in Nailer *v.* Stanley, 10 S. & R. 450, and re-affirmed in Cowden's Estate, 1 Barr 267, and as extended expressly to mortgages in the case of Mevey's Appeal, 4 Barr 80. This doctrine, it was held in Taylor's Executors *v.* Maris, 5 Rawle 51, applied to lands in the hands of vendee as well as of an heir. The Act of 1822, respecting the right to release parts of mortgaged premises, has no effect upon the application of this doctrine: Mevey's Appeal, 4 Barr 88, note *a.* The said Ferdinand Sarmiento, owner of the fee of premises No. 839 North Broad street, city of Philadelphia, and deriving title through the said Henry A. Charter, who purchased the said lot prior to the time of the purchase of the lot No. 837 North Broad street by Peter Bitmeyer, was entitled to compel the mortgagee, holding the general mortgage covering the three lots Nos. 837, 839 and 841 North Broad street, or his proper legal representative (Beddow *v.* Dewitt,

7 Wright 326), to resort to the said lot No. 837, before proceeding against his lot No. 839. Now a mortgagee who has released a vendee of the mortgagor for a valuable consideration, cannot recover against a prior vendee of the mortgagor, as between whom and the second vendee the land of the latter was not liable: Paxton *v.* Harrier, 1 Jones 312; Lowry *v.* McKinney, 18 P. F. Smith 294. This release, therefore, discharged the lien of the mortgage therein described, being the mortgage in question sought to be recovered against the premises No. 839 North Broad street. The proviso excepting the said premises from the operation of the release was nugatory, the owner of the said premises being in no way party or privy thereto. The auditor, therefore, decides, upon the authority of the above cases, that the mortgage given by John Grimstone to Alonzo Farrington, and by his administratrix, Mary Farrington, assigned to William Spink, who, it is alleged, assigned to one Edward D. Martin, and recorded in Mortgage Book G. W. C., No. 4, page 415, &c., is not a lien upon the fund in court or any part thereof. The claim of Amanda Martin, executrix of the last will and testament of Edward D. Martin, is, therefore, not allowed."

The auditor therefore awarded to Susan L. Morris the sum of $1701.11, the amount due on her mortgage, and the balance of the fund, $725.24, to Ferdinand Sarmiento, as terre-tenant and owner.

At the conclusion of the hearing before the auditor, Amanda Martin demanded an issue to try the disputed fact of the validity of the $2000 mortgage, of its assignment to Edward D. Martin, and of the payment of interest thereon. The auditor refused the request, and reported thereon that the question of law involved as decided in his report would prevent recovery by the petitioner were she to establish every fact said by her to be in dispute.

Amanda Martin filed exceptions to the auditor's report, because he refused to grant the issue demanded, or to file an interlocutory report thereon, and because he refused to award to her the amount of her claim with interest. After hearing, the court made the following order: "And now, July 9th 1878, report referred back to the auditor to report whether the releasor, Mary Farrington, had notice of the conveyance of house No. 839 at the time of her release of houses No. 837 and 841, and if so, what was the value of house No. 837 at the time it was released."

The auditor, after taking further testimony, reported in a supplemental report as follows: "From all the facts established by the testimony in the case, it appears that William Spink was the equitable owner of the properties Nos. 837, 839, 841 North Broad street from the 22d day of May 1849, the date of the conveyance of these properties to John Grimstone, until the conveyance to Foust of No. 841, on the 12th day of June 1850, as to No. 841,·

[Martin's Appeal.]

until the conveyance to Charter of No. 839, on the 21st day of August 1850, as to No. 839, and until the conveyance to Bitmeyer of No. 837, on the 7th day of November 1850, as to No. 837, and was equitable owner of the mortgage of $2000 in question from the date of its creation, the 25th day of May 1849. * * * Mrs. Mary Farrington, called by Mr. Thompson, counsel for Amanda Martin, testified that she had received no consideration whatever, for either the release of mortgage made November 10th 1851, the release in question, nor for the assignment of the same, made November 17th 1851, to William Spink, that she had no knowledge of the conveyance of any of the properties, including No. 839, and that she supposed that the property belonged to Spink at that time.

" From all this it appears that Mary Farrington had no interest or right whatever in this mortgage, and acted in the matters of the release and assignment of it entirely as directed by William Spink, the equitable owner, which corroborates Spink's own testimony upon this point." * * *

" The auditor finds, therefore, that although Mary Farrington, the releasor, had no knowledge of the conveyance of No. 839 at the time of the release of Nos. 837 and 841, yet such knowledge was unnecessary, she having no interest to be protected, having no right to the mortgage, as William Spink was the equitable owner of both houses and mortgage, and was, of course, aware of all conveyances of the former when he directed the release of the latter.

" As to the second fact, to wit: the value of No. 837 North Broad street at the time of the release. The auditor finds the value of this property was, at the time of the release executed by Mary Farrington, $5000, subject to a ground-rent of $152.50 a year, the principal of which is $2541.67, which, deducted from the value, $5000, would leave $2451.33 to satisfy the mortgage of $2000."

No change was made in the distribution as formerly reported.

To the supplemental report, Amanda Martin filed exceptions, because the auditor put an excessive value on the premises No. 837, and because he reported that " Mary Farrington had no interest or right whatever in this mortgage, and acted in the matter of the release, and assignment of it, entirely as directed by William Spink," and that therefore, notice was immaterial to Mrs. Farrington.

The court below dismissed the exceptions and confirmed the reports of the auditor. Amanda Martin thereupon took this appeal, assigning for error the refusal of the court to grant an issue; the dismissal of her exceptions; and, the confirmation of the report and supplemental report of the auditor.

*Aaron Thompson.* for the appellant.

[Martin's Appeal.]

*William L. Marshall*, for the appellee.

Mr. Justice GORDON delivered the opinion of the court, January 31st 1881.

If a mortgagor or judgment-debtor has a lot or parcel of land, say of ten acres, and of this he sells five to B., the remaining five acres, if of sufficient value, must sustain the whole charge, and the part sold to B. cannot be made to contribute until that remaining in the debtor or mortgagor has been exhausted; and this rule extends to purchasers of the encumbered premises, and in an order inverse to the date of their several titles. The burthen falls first upon the last purchase, and it is only after the fund arising from this source has been consumed, that resort can be had to that which is antecedent, and so on in regular order, until the land of the first purchaser is reached, which is the last to be called on for contribution, and then only to the amount of what remains of the original charge after the lands post-dating it in title have been exhausted. And this, it is said in Mevey's Appeal, 4 Barr 80, because it cannot be in the power of the debtor, by the act of selling or assigning his remaining land, to throw the burthen of the payment or a ratable part of it back on the first purchaser. It is true, that in the Presbyterian Church Corporation *v.* Wallace, 3 Rawle 165, a different doctrine was held, but that case was in terms overruled in Cowden's Estate, 1 Barr 267, and the former ruling of Nailer *v.* Stanley, 10 S. & R. 450, restored.

Precisely the same rule applies to the release of the lien of a mortgage or judgment from the land of one of several vendees of the mortgagor or debtor. Thus if A.'s land is mortgaged to B., and A. afterwards divides that land into three several parts, and at successive periods of time sells such parts to C., D. and F., and B. releases D., this also releases C., unless indeed the values of the purparts of both F. and D. should be insufficient to satisfy the mortgage, in which case C. may be called upon for the balance.

This is the doctrine of Paxton *v.* Harrier, 1 Jones 312, and Lowry *v.* McKinney, 18 P. F. Smith 294. In the case last cited it was said, that the land of the first purchaser was surety for the debt upon the whole land, and by payment of it this purchaser would be entitled to subrogation, and of this fact the creditor with knowledge was bound to take notice, hence he could not release any of the primary securities and expect to hold the secondaries.

The application of this principle renders the solution of the case in hand easy. Grimstone, on the 25th May 1849, owned the lots Nos. 837, 839, 841, and on that day executed the mortgage now owned by the appellant to Alonzo Farrington. On the next day after the execution of this mortgage, Grimstone conveyed to Robert M. Fitch, and Fitch afterwards conveyed as follows : June 12th 1850, No. 841 to Robert M. Foust; August 21st of the same

[Martin's Appeal.]

year, No. 839, the lot in controversy, to Henry A. Charter, under whom F. Sarmiento, one of the appellees in this case, now claims; November 7th 1851, No. 837 to Peter Bitmeyer. Then, on the 10th of November 1851, Mary Farrington, as administratrix of Alonzo Farrington's estate, released the lien of the above-mentioned mortgage from lots No. 837 (Bitmeyer) and 841 (Foust), attempting, without the consent of Charter, to reserve the lien on 839, which was, of course, nugatory. Finally, on the 17th of November following, she assigned the mortgage to William Spink, who afterwards transferred it to Edward D. Martin, now deceased, the estate of whom is represented by the appellant. Now, as we have before us no question of notice or of the entire sufficiency of the Bitmeyer lot, No. 837, to have paid the mortgage in full, the application for an issue not having raised either of these questions, and the master having found that the value of said lot was ample for that purpose, it is very clear that the release of 837, the subsequent purchase, released also 839, the prior purchase. It follows that the court below properly awarded the money arising from the sheriff's sale of this property, after payment of the costs and mortgage of Mrs. Morris, to Sarmiento.

It is furthermore thus made apparent, that the demand for an issue of fact was properly refused, since, if to the appellant all that she proposes to establish thereby is admitted, her case is made no better, since the writings themselves exhibit a condition of affairs under which she cannot recover, and from which the proposed facts would not relieve her.

The decree is affirmed with costs.